IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

NORMA JEAN RILEY,

                    Plaintiff,

         v.                                                    Civil Action No. 1:06-cv-145

MICHAEL ASTRUE,
Commissioner of Social Security,

                    Defendant.


**REPORT AND RECOMMENDATION
SOCIAL SECURITY**


**I.  Introduction**

A.       Background

         Plaintiff, Norma Jean Riley, (Claimant), filed her Complaint on September 28, 2006,

seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of an adverse decision by Defendant,

Commissioner of Social Security, (Commissioner).[1]  Commissioner filed his Answer on

February 20, 2007.[2]  Claimant filed her Motion for Summary Judgment on March 20, 2007.[3]

Commissioner filed his Motion for Summary Judgment on April 18, 2007.[4]

B.       The Pleadings

                    1.       Claimant's Motion for Summary Judgment.

                    2.       Commissioner's Motion for Summary Judgment.

_____

         [1] Docket No. 1.

         [2] Docket No. 9.

         [3] Docket No. 12.

         [4] Docket No. 13.

C.    Recommendation

I recommend that:

1.    Claimant's Motion for Summary Judgment be GRANTED and the case REMANDED to the Commissioner.  Claimant appeared pro se before the ALJ, but did not execute a valid waiver of her right to counsel.  Claimant suffered prejudice in her pro se status as the ALJ failed to adequately develop the record regarding Claimant's mental impairments.  On remand, the ALJ should obtain a mental health medical professional to examine Claimant and produce an evaluation using the common WAIS-III and WRAT-3 tests.

2.    Commissioner's Motion for Summary Judgment be DENIED for the same reasons set forth above.

## II.  Facts

A.    Procedural History

Claimant filed an application for Supplemental Security Income on February 26, 2004, with a protective filing date of January 30, 2004.  The claim was denied initially and on reconsideration.  Claimant requested a hearing before an ALJ and received a hearing on March 29, 2005.  The ALJ issued a decision unfavorable to Claimant on July 17, 2005.  Claimant requested review by the Appeals Council and submitted additional evidence.  The Appeals Council incorporated additional evidence into the record, but denied Claimant's request for review.  Claimant brought this action, which proceeded as set forth above.

B.    Personal History

Claimant was 37 years old on the date of the March 29, 2005 hearing before the ALJ. Claimant has an eleventh grade education in a special education curriculum.  Claimant has no

prior relevant work experience.

C.    Medical History

    The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability: January 30, 2004 – July 17, 2005.[5]

**Physical Residual Functional Capacity Assessment, 4/9/04, Tr. 109**
Exertional limitations: none established
Postural limitations: none established
Manipulative limitations: none established
Communicative limitations: none established
Environmental limitations: none established

**Janet Bianconi, M.A., 4/18/86, Tr. 137**
WAIS-R
Verbal scale IQ: 71
Performance scale IQ: 83
Full scale IQ: 75

The patient functions in the borderline range of intellectual functioning.

**Psychiatric Review Technique, 4/8/04, Tr. 140**
Medical disposition: impairments not severe

The patient suffers from anxiety.

Functional limitation and degree of limitation
    Restriction of activities of daily living, difficulties in maintaining social functioning,
difficulties in maintaining concentration, persistence, or pace: mild
    Episodes of decompensation, each of extended duration: none

**Physical Residual Functional Capacity Assessment, 6/2/04, Tr. 154**
Exertional limitations: none established
Postural limitations: none established

---

    [5] Some of the evidence in the record comes from before and after the relevant time
period.  Evidence obtained prior to the alleged onset date may be relevant to the instant claim.
See Tate v. Apfel, 167 F.3d 1191, 1194 n.2 (8th Cir. 1999); Burks-Marshall v. Shalala, 7 F.3d
1346, 1348 n. 6 (8th Cir. 1993); Williams v. Barnhart, 314 F. Supp. 2d 269, 272 (S.D.N.Y.
2004).  Evidence from after the relevant time period should also be considered as long as it
relates to the relevant time period.  Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987).

Manipulative limitations: none established
Visual limitations: none established
Communicative limitations: none established
Environmental limitations: none established

**Lois Holloway, M.S., 6/21/04, Tr. 163**
Diagnosis:
Axis I: major depressive disorder recurrent moderate, generalized anxiety disorder
Axis II: borderline intellectual functioning, by history
Axis III: reported migraine heachaches

**Mental Residual Functional Capacity Assessment, 8/12/04, Tr. 167**
Understanding and memory
 The ability to remember locations and work-like procedures, the ability to understand and remember very short and simple instructions: not significantly limited
 The ability to understand and remember detailed instructions: moderately limited

Sustained concentration and persistence
 The ability to carry out very short and simple instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to sustain an ordinary routine without special supervision, the ability to make simple work related decisions, the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods: not significantly limited
 The ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them: moderately limited

Social interaction
 The ability to ask simple questions or request assistance, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness: not significantly limited
 The ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors: moderately limited

Adaptation
 The ability to respond appropriately to changes in the work setting, the ability to be aware of normal hazards and take appropriate precautions, the ability to set realistic goals or make plans independently of others: not significantly limited
 The ability to travel in unfamiliar places or use public transportation: moderately limited

**Psychiatric Review Technique, 8/12/04, Tr. 172**
The patient suffers from BIF, depression, and anxiety disorder.

Functional limitation and degree of limitation
      Restriction of activities of daily living: mild
      Difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace: moderate

**Vishwanath Hande, M.D., 5/19/04, Tr. 189**
Assessment: migraine headaches, allergic rhinitis, history of underlying depression

**Vishwanath Hande, M.D., 2/20/04, Tr. 191**
Assessment: migraine headaches, anxiety, insomnia

**Vishwanath Hande, M.D., 1/4/05, Tr. 199**
Assessment: sinusitis, history of asthma, migraine headaches, allergic rhinitis, depression

**Vishwanath Hande, M.D., 12/13/04, Tr. 201**
Assessment: URI, otitis externa, depression

**Kim Myung-Sup, M.D., 10/6/05, Tr. 208**
Impression: minimal spondylosis at C5-6

**Cynthia I. Hagan, M.A. and Michael D. Morrello, M.S., 7/12/06, Tr. 223**
WAIS-III
Verbal IQ: 62, 1st percentile
Performance IQ: 76, 5th percentile
Full scale IQ: 65, 1st percentile

The patient tested at the mild mental retardation range.  If tested repeatedly, the scores would fall between the mild mental retardation range and the borderline range

WRAT-3
Reading: 34 (raw score), 68 (standard score, mild mental retardation), 4th grade level
Spelling: 26 (raw score), 62 (standard score, mild mental retardation), 4th grade level
Arithmetic: 28 (raw score), 64 (standard score, mild mental retardation), 3rd grade level

Diagnostic impression:
Axis I: major depressive disorder, recurrent, severe, generalized anxiety disorder
Axis II: borderline intellectual functioning
Axis III: right leg pain, lower back pain, asthma, left foot pain, allergies, high cholesterol, and migraine headaches
Axis IV: economic problems, vocational problems
Axis V: 55

D.    <u>Testimonial Evidence</u>

Testimony was taken at the March 29, 2005 hearing.  The following portions of the testimony are relevant to the disposition of the case.

[EXAMINATION OF CLAIMANT BY ALJ]

Q        Ms. Riley, did you attempt to get a representative?

CLMT:        Uh-huh.

ALJ:    Do you know you have the right to one?

CLMT:        Uh-huh.

ALJ:    And I want to make sure you wanted, did you talk to anybody at all about helping you?

CLMT:        Uh-huh.

ALJ:    Do you want to proceed today without a representative?

CLMT:        Yeah, I guess.

                        *                *                *

Q        Can you read and write?

A        Pretty good.

                        *                *                *

Q        Do you smoke cigarettes?

A        Yes.

Q        How much a week, a day, I mean?

A        A pack, sometimes more.

                        *                *                *

Q        What do you do during the day?

A       Well, when I don't feel that good, basically sit and watch TV.

Q       What type of things do you like?

A       Different kinds of movies.

Q       Do you take full care of your boys?

A       Uh-huh.

Q       They're both boys, right?

A       Yes.

Q       Okay.  And they're in elementary school, I guess.  What school do they go to?

A       Gilmore in Normantown.

Q       Okay.  Do you go over to school ever to talk to the teachers?

A       No.

Q       Do you go to church?

A       Uh-uh.

Q       It said here when you saw a psychologist here for the Social Security, that you, you'll shop in Wal-mart, right?

A       Yeah.

Q       Is that Wal-mart in Normantown?

A       It's in Spencer.

Q       Spencer.  Do you have any friends?

A       Just the family down there.

Q       Is it, are they all near your home?

A       Well, my husband's mom and dad, and his brother and sister.

Q        Do you have cookouts, anything like that?

A        We try to have them in the summertime.

Q        Do you cook during the day?

A        Yeah.

Q        Like you cook full meals or do you have any problem with that?

A        Sometimes I don't fix full meals because I don't feel like it, I'll just - -

Q        Do you, do you get along with your neighbors?

A        Yeah.

Q        Now do you have any hobbies you like to do at home?

A        No.

Q        Like do you sew or do you have any crafts you do?

A        No, I ain't that good a sewer.

Q        Do others take you, like your father-in-law, is he still driving you around?  I know your husband had a DUI, but how do you get around, is that who usually takes you around, his father?  And you're shaking your head yes, but the microphone can't pick that up.

A        Oh, yes, I'm sorry.

Q        Okay, that's okay.  Are your headaches worse under any, what causes them, Ms. Riley, the headaches, do you think?

A        Well, when I get aggravated it does, they get worse or whatever.

Q        Uh-huh.  Before you left school in the eleventh grade, did you get in any, was there any problems with suspension or behavior, or anything like that?

A        No.

Q       Do you read anything around the house?

A       Uh-uh.

Q       You can read, but you just choose not to?  I mean, you can read if you wanted to, right?

A       Yeah.

Q       Do you look at the Knicks papers?

A       Uh-huh, I'll just glance through it sometimes.

Q       Now do you think you, your weight is stable, do you think you've lost, gained, or stayed about the same, just from your clothes, I know you don't know how much you weigh?

A       I think I'm about the same.

Q       Have you made any trips?

A       Excuse me?

Q       Have you gone on any trips out of the region?

A       No.

*               *               *

Q       How's your sleep at night?

A       I still don't sleep that well.

Q       How much sleep did you get last night?

A       Maybe two hours, if that.

Q       And how about the night before?

A       About the same.

Q       Just two hours, what do, do you get up and watch TV or do you just lay there?

A       I just lay there.

                        *               *               *

Q       Now you told the one doctor you gained 60 pounds last summer.  Is that right, did you have a big weight gain at one time?  You're shaking your head yes.

A       Oh, yeah, sorry.

Q       And then did you lose it after you gained it?

A       Well, I lost weight at one time, then I gained it back, and I ain't been able to lose it.

Q       Okay.  I think that's all I had to ask you about, Ms. Riley.  And do you, I have to do one more thing before I forget, are you, do you have panic attacks, anything like that or is it just you're anxious?  Do you know?

A       I - -

Q       I mean, do you have, when you feel bad, like depressed, what does that mean to you?

A       When I get depressed I'll have, I'll want to cry and stuff all time.

Q       Did the doctor try on a medication called Elavil for a while, do you remember that?

A       No, I don't remember.

Q       Okay.  You say your headaches are worse when you're under stress.  What, what kind of stress do you have, just to give me an idea?

A       Just, I don't know, I get aggravated or something.  I don't know how to explain it.

                        *               *               *

[EXAMINATION OF VOCATIONAL EXPERT BY ALJ]

Q      Ms. Riley has not past relevant work so please assume a younger individual with a limited education who can read and write, precluded from performing all but light work with no hazards or temperature extremes, an unskilled, low stress, combined just one and two step processes, routine, and repetitive tasks, primarily working with things rather than people, entry level, and work that is in a controlled environment as well, no excessive fumes, dust, fluid. With those limitations can you describe any work this hypothetical individual could perform?

VE:      Yes, may I have a moment, Your Honor. Considering your hypothetical requesting comment from me, it'd be my testimony that jobs would exist in the national economy and also the state of West Virginia. First job at the light level would be that of an assembler of small components, unskilled, entry level, for which there are at least a half million jobs in the national economy, minimally 3300 in the state of West Virginia. And also at the light level unskilled, light cafeteria attendant, 343,000 jobs in the national economy, at least 1400 in the state of West Virginia. And those jobs are consistent with the DOT.

ALJ:      The Claimant's concentration was so impacted that she cannot stay on task one-third to two-thirds of the day, are those jobs affected?

VE:      Yes, they are affected and precluded, as well as any other jobs, Your Honor.

*            *            *


E.      Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the

Claimant's alleged impairments affect her daily life.

- Takes care of her personal needs and grooming (Tr. 103)

- Prepares meals including cereal, beans, and biscuits (Tr. 103)

- Does laundry and vacuuming (Tr. 103)

- Washes dishes, takes out the trash, and cares for her children (Tr. 103)

- Pays bills (Tr. 103)

- Shops for food, clothing, medication, and cigarettes (Tr. 104)

- Watches television for about eight hours per day (Tr. 104)

- Listens to the radio for about two hours per day (Tr. 104)

### III.  The Motions for Summary Judgment

A.    Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that (1) she made an ineffective waiver of her right to counsel before the ALJ, (2) that the ALJ failed to adequately consider Claimant's impairments under listing 12.05C, and (3) that the Appeals Council erred in failing to grant review or explain its reasons for denying review given the new evidence Claimant submitted.

Commissioner maintains that the ALJ's decision was supported by substantial evidence.

B.    The Standards.

1.    Summary Judgment.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec.  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v.  Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.      Judicial Review.  Only a final determination of the Commissioner may receive judicial review.  See, 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.      Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.      Social Security - Medically Determinable Impairment.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.      Disability Prior to Expiration of Insured Status- Burden.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42

U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6. Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing

14

any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

C.    Discussion

I.

Whether Claimant Effectively Waived Her Right to Representation at the Administrative Hearing

Claimant first contends she did not effectively waive her right to representation at the hearing before the ALJ. Claimant contends Commissioner should have done more to inform her of her right to representation and the benefits of representation. Claimant asserts this was especially important here due to Claimant's low mental capabilities. Commissioner contends Claimant received adequate notice of her rights. Commissioner points out Claimant received written notice that groups of ways to locate an attorney and stated at the administrative hearing that she wished to proceed pro se. Commissioner also notes Claimant's allegedly low mental capabilities did not prevent her from contracting for legal services with counsel to this appeal and Claimant must have understood the administrative notices sent to her since she filed the correct paperwork to appeal in the administrative process.

A disability claimant has a right to representation before the ALJ. 42 U.S.C. § 406. A claimant may waive the right if Commissioner adequately informs him of it. Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991). Adequate notification may be given in writing or

orally at the administrative hearing.  Frank v. Chater, 924 F. Supp. 416, 425 (E.D.N.Y. 1996).

The notice must explain several things: "(1) the manner in which an attorney can aid in the

proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the

limitation on attorney fees to 25 percent of past due benefits and required court approval of the

fees."  Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994).  A notice lacking information about

the twenty five percent limit on attorney fees results in an ineffective waiver.  Edwards v.

Sullivan, 937 F.2d 580, 585-86 (11th Cir. 1991); see also Clark v. Schweiker, 652 F.2d 399, 403

(5th Cir. 1981).

        Nevertheless, an ineffective waiver of the right to counsel does not necessarily result in a

remand.  Edwards, 937 F.2d at 586.  A claimant must suffer prejudice.  Id.  This means that the

record must contain evidentiary gaps resulting in obvious prejudice or unfairness.  Id.

Commissioner has the burden of demonstrating an adequately developed record.  Binion, 13 F.3d

at 245.

        In this case, Claimant's waiver of the right to counsel was clearly ineffective since

Claimant was not told attorney fees would be limited to twenty five percent of any past due

benefits.  The Court has reviewed the documents Commissioner contends show an adequate

notice and finds none of them contain this information.  (Tr. 33, 39, 55, 62, 66-68).  Furthermore,

the ALJ did not inform Claimant of this orally.  (Tr. 39).  Although Commissioner eventually

informed Claimant of this limitation after the ALJ issued his decision, this was too late to allow

Claimant to effectively waive counsel.  Binion, 13 F.3d at 245; (Tr. 22).  Therefore, the waiver

of the right to counsel is invalid and the Court must consider whether Claimant suffered

prejudice so as to result in remand.

The Fourth Circuit has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The duty to explore the facts is especially important "in cases of uneducated, pro se claimants and where the absence of counsel appears to prejudice a claimant." Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981). In Cook, the court held that where the ALJ failed to develop certain pieces of medical evidence, it was not possible to tell whether the claimant qualified for disability. Cook, 783 F.2d at 1173. Thus, the court held the ALJ erred. Id.

In this case, the Court concludes Claimant suffered prejudice by a lack of counsel since the ALJ failed to adequately develop the record. The ALJ determined Claimant had a learning disorder as part of a collectively severe impairment. (Tr. 25). Claimant generally received poor grades in school. (Tr. 214). The record before the ALJ included a report by a school psychologist finding Claimant had only a borderline range of intellectual functioning. (Tr. 139). This report was from 1986, when Claimant was in the tenth grade. (Tr. 137). This places it nineteen years before the administrative hearing. It appears the ALJ did not have any other report from an examining medical professional regarding Claimant's mental abilities before him. Based on this record, the ALJ could not accurately assess the current state of Claimant's mental ability. The ALJ should have asked a medical professional to examine Claimant and submit a report regarding her current mental capabilities. This should have included, at a minimum, evaluation with the commonly used WAIS-III and WRAT-3 tests.

Commissioner notes that Claimant's counsel later submitted a report using these tests

from psychologists Hagan and Morrello. (Tr. 223-229). The Appeals Council incorporated this evidence into the record. (Tr. 8). Where the Appeals Council incorporates evidence into the record not considered by the ALJ, reviewing courts review the entire administrative record, not only that portion considered by the ALJ, in determining whether substantial evidence supports the ALJ's decision. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Courts commonly consider this issue when a claimant submits news evidence to attack the factual underpinning of the ALJ's decision. Evidence the ALJ should have developed that is provided after the decision does nothing to increase the initial lack of substantial evidence. It merely provides evidence the ALJ should consider on remand.

Therefore, this case should be remanded to Commissioner for further development of the record. Although the psychological report submitted by Claimant contains the type of information the Court concludes is necessary for full development of the record, the Court believes the ALJ should obtain a second report from an independent examining source. A medical professional should examine Claimant using the WAIS-III and WRAT-3 tests and issue a report regarding Claimant's medical capabilities. Combined with Claimant's evidence, this should provide a full picture of Claimant's current mental status.

II.

The ALJ's Evaluation of Listing 12.05C

Claimant next contends the ALJ failed to adequately evaluate her impairments under listing 12.05C, which concerns mental retardation. The Court has already found the ALJ should obtain additional evidence regarding Claimant's mental capabilities and so need not discuss this issue in depth. The Court simply takes time to note that based on the inadequate record before

the ALJ, Claimant could not meet the listing since an IQ score of between sixty to seventy is required and the lowest IQ score in the ALJ's record was 71. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C; (Tr. 138). While Claimant notes the three point margin of error in the test places this withing the disability range, Commissioner has correctly argued the Court should not consider the margin of error. Burns v. Barnhart, 312 F.3d 113, 125 (3d Cir. 2002).

Claimant's low mental capabilities present an obvious issue under listing 12.05C during remand. The ALJ should compare the evidence to the requirements of the listings. Cook, 783 F.2d at 1173.

III.

<u>Whether the Appeals Council Erred in Failing to Accept Review or State Its Reasons for Denying Review in Light of the New Psychological Report Claimant Submitted</u>

Finally, Claimant argues that in light of the new evidence from psychologists Hagan and Morrello she submitted, the Appeals Council should have either granted review or stated its reasons for denying review. Yet Claimant states the Appeals Council issued only a standard form decision. Commissioner contends substantial evidence supports the initial decision and so the Appeals Council did not err.

The Regulations provide that where new and material evidence is submitted to the Appeals Council and the evidence relates to the time on or before when the ALJ made his decision, the Appeals Council must "evaluate the entire record including the new and material evidence." 20 C.F.R. § 404.970(b). This does not mean the Appeals Council must grant review. Id. Rather, it "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of evidence currently of record." Id. In Wilkins, 953 F.2d at 95, the court held that while this Regulation imposes a mandatory duty for

the Appeals Council to consider new and material evidence, the Appeals Council may still decline to review the case. Furthermore, where new and material evidence is submitted and the Appeals Council nevertheless declines review, a reviewing court should simply consider the entire administrative record, including the new material evidence, to determine whether substantial evidence supports the ALJ's decision. Id. at 96. Wilkins did not expressly address the depth of consideration the Appeals Council had to give to new and material evidence submitted to it. Id. at 95-96.

In Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992), the Eighth Circuit held it was not necessary for the Appeals Council to conduct an independent review of evidence submitted to it. The court noted the governing statute provides only for review of the final administrative decision, but when the Appeals Council denies review the decision of the ALJ is the final decision. Id. Therefore, the court concluded it lacked jurisdiction to review the decision of the Appeals Council. Id.

The Fourth Circuit has given conflicting precedent in unpublished opinions regarding the review the Appeals Council must give to newly submitted evidence. The court explicitly endorsed the reasoning of Browning in Hollar v. Comm'r of the Social Sec. Admin., 1999 U.S. App. LEXIS 23121, at *3 (4th Cir. Sept. 23, 1999) (holding that "We agree with [Browning]"). The court again seemed to endorse Browning in Freeman v. Halter, 15 Fed. Appx. 87, 89 (4th Cir. 2001). However, in Thomas, 24 Fed. Appx. at 162, the Fourth Circuit held a bare explanation by the Appeals Council that it rejected additional evidence was insufficient. In Thomas, the claimant submitted additional evidence from a treating physician who conducted an examination after the administrative hearing. Id. The Appeals Council summarily denied

review, noting it found nothing significant about the new evidence. Id. However, the record was unclear that the doctor was a treating physician until oral argument on appeal. Id. The court found itself unable to review the administrative decision without clarification that the Appeals Council knew the doctor was a treating physician. Id. The court determined clarification on this point was especially important because of the significance of the treating physician rule, which requires the opinions of treating physicians be given great weight. Id. (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) and Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)). The court ordered the case remanded. Id.

A published Fourth Circuit opinion is ambiguous on the need of the Appeals Council to consider newly submitted evidence. In Myers v. Califano, 611 F.2d 980, 983 (4th Cir. 1980), the claimant submitted a new psychiatric report and a new chiropractic report to the Appeals Council. The Appeals Council noted it received the items, but did not elaborate. Id. The Fourth Circuit noted the chiropractic report was largely duplicative of other evidence and so did not need to be considered. Id. On the other hand, the psychiatric report presented new and material evidence and so should have been the subject of detailed findings. Id. The court found the failure to make specific findings a basis for remand. Id.

Lower courts within the Fourth Circuit have also given conflicting precedent on this issue. In King v. Barnhart, 415 F. Supp. 2d 607, 610-12 (E.D.N.C. 2005), the court held that where new evidence is submitted to the Appeals Council and the Appeals Council does not make an independent evaluation, the proper course is to simply evaluate the record as a whole, including the new evidence, to determine whether there is substantial evidence to support the administrative decision. The court reached this conclusion after a detailed evaluation of Fourth

Circuit precedent.  Id.  It concluded from that precedent that where the new evidence does not undermine the administrative decision, the Fourth Circuit affirms, but where the new evidence does make substantial evidence lacking, it remands for further consideration.  Id.  Another court agreed with the Browning decision in Jackson v. Barnhart, 368 F. Supp. 2d 504, 508 n. 2 (D.S.C. 2005).  The court noted the new evidence submitted contradicted the record.  Id.  On the other hand, some courts have held that where the Appeals Council incorporates new evidence into the record, the absence of an explanation of the weight given to the evidence necessitates remand since it is the function of the administrative adjudicators to weigh the evidence.  Scott v. Barnhart, 332 F. Supp. 2d 869, 877-79 (D. Md. 2004); Harmon v. Apfel, 103 F. Supp. 869, 872-74 (D.S.C. 2000); Riley v. Apfel, 88 F. Supp. 2d 572, 579-80 (W.D. Va. 2000).

This Court is persuaded the King court has properly viewed the issue in accord with Fourth Circuit precedent and that where the Appeals Council incorporates new evidence into the record but does not make specific findings regarding it, a reviewing court should simply weigh all the evidence to determine if substantial evidence exists.  First, this approach accords with the Fourth Circuit's published precedent of Myers.  The court there found no fault in the Appeals Council not evaluating cumulative evidence, but ordered remand where there was no explanation concerning new and material evidence.  Myers, 611 F.2d at 983.  The new and material evidence not evaluated by Commissioner meant the decision lacked substantial evidence.  This approach also reconciles the Thomas and Hollar decisions.  The Thomas court there was careful to point out the special significance of the how the treating physician rule meant the new evidence undermined confidence in the administrative decision.  Thomas, 24 Fed. Appx. at 162.  On the other hand, when the Hollar court made a broad statement that the Appeals Council is not

required to analyze new evidence, there was no evidence in the opinion that the new evidence would have changed the outcome.  <u>Hollar</u>, 1999 U.S. App. LEXIS 23121, at *3.

In this case, the Appeals Council's opinion referenced evidence in an enclosed order. (Tr. 5).  Enclosed with the opinion was an order making the new report part of the record.  (Tr. 8).  Thus, it is obvious the Appeals Council considered the evidence, but did not give any explanation as to the weight accorded to it.  Under the law as explained above, the Court must now determine whether substantial evidence exists to support the ALJ's decision.  The Court has already found the ALJ's opinion lacks substantial evidence due to the ALJ's failure to develop the record.  The Appeals Council's denial of review does nothing to change this.

## IV.  Recommendation

For the foregoing reasons, I recommend that:

1. Claimant's Motion for Summary Judgment be GRANTED and the case REMANDED to the Commissioner.  Claimant appeared pro se before the ALJ, but did not execute a valid waiver of her right to counsel.  Claimant suffered prejudice in her pro se status as the ALJ failed to adequately develop the record regarding Claimant's mental impairments.  On remand, the ALJ should obtain a mental health medical professional to examine Claimant and produce an evaluation using the WAIS-III and WRAT-3 tests.

2. Commissioner's Motion for Summary Judgment be DENIED for the same reasons set forth above.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to

which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: August 20, 2007

 /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE